**In re James B. McNALLEN, Debtor.**

**Patricia McNallen HAGAN, Plaintiff–Appellee,**

v.

**James B. McNALLEN, Defendant–Appellant.**

**No. 94–2320.**

United States Court of Appeals, Fourth Circuit.

Argued May 4, 1995.

Decided Aug. 10, 1995.

**ARGUED:** H. Bradley Evans, Jr., Hazel & Thomas, P.C., Alexandria, VA, for appellant. Robert R. Vieth, McGuire, Woods, Battle & Boothe, L.L.P., McLean, VA, for appellee. **ON BRIEF:** Nathan B. Smith, McGuire, Woods, Battle & Boothe, L.L.P., McLean, VA, for appellee.

Before RUSSELL, HAMILTON, and LUTTIG, Circuit Judges.

Affirmed by published opinion. Judge HAMILTON wrote the opinion, in which Judge RUSSELL and Judge LUTTIG joined.

## OPINION

HAMILTON, Circuit Judge:

Debtor–Appellant James McNallen (McNallen) appeals the judgment of the district court affirming the bankruptcy court's decision that a tort judgment rendered against McNallen in a Texas court was not dischargeable under 11 U.S.C.A. § 523(a)(6) (West 1993), which provision denies discharge from debt for willful and malicious injury to person or property by the debtor. In an adversary proceeding, the bankruptcy court denied discharge and entered summary judgment in favor of Appellee Patricia Hagan (Hagan), McNallen's sister, because it concluded that the issues of McNallen's willful and malicious conduct were determined by the Texas court, and therefore, collateral estoppel barred McNallen from attempting to litigate these issues in the bankruptcy proceeding. Ruling from the bench, the district court summarily affirmed. McNallen appeals, and we affirm.

## I.

Hagan is the attorney-in-fact for her mother, Sallie Lou McNallen (Sallie Lou), who unfortunately suffers from Alzheimer's disease. Because of Sallie Lou's failing physical and mental health, she was placed in a retirement home that provided her with long-term care. Despite the diagnosis of Sallie Lou's doctors that she suffered from Alzheimer's disease, McNallen concluded that his mother was not physically and mentally incapacitated and attempted to remove her from the care of the retirement home. Fearful that her brother's attempts would injure Sallie Lou, Hagan instituted proceedings against McNallen in Texas state court, alleging claims of intentional infliction of emotional distress and intentional invasion of privacy. In addition to money damages for the intentional tort claims, Hagan successfully petitioned the Texas state court to enjoin McNallen from improperly attempting to remove Sallie Lou from the retirement home, improperly communicating with her, or attempting to harm her. In issuing the injunction, the Texas judge specifically found that "McNallen intends to, and will, unless prevented by order of this court ... cause severe distress and physical harm to Sallie Lou...." (J.A. at 294).

On June 29, 1993, subsequent to a seven-day trial, a Texas jury returned a verdict in favor of Hagan on the intentional tort claims, assessing compensatory damages of $5,583 and punitive damages of $100,000. In special verdict number two, the jury specifically answered "yes" to the following question:

## QUESTION NO. 2

Did James B. McNallen intentionally or recklessly act outrageously toward Sallie Lou McNallen, causing her severe emotional distress?

James B. McNallen's conduct was "outrageous" if it went beyond the bounds of decency, and a civilized community would find it to be atrocious and utterly intolerable. However, even if James B. McNallen's conduct would not otherwise have been outrageous, it qualifies as "outrageous" if James B. McNallen engaged in the conduct knowing that Sallie Lou McNallen was peculiarly susceptible to emotional distress by reason of a physical or mental condition, weakness, or peculiarity.

The outrageous character of James B. McNallen's conduct may arise from his abuse of his relationship with Sallie Lou McNallen if that relationship gave him actual or apparent authority over her, or the power or apparent power to affect her interests.

In determining whether James B. McNallen acted intentionally, you may disregard his protestations that he did not intend to harm Sallie Lou McNallen and, instead, may infer his intent from the other evidence.

"Severe emotional distress" includes all highly unpleasant mental reactions such as

anxiety, fear, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry or nausea. This emotional distress must be extreme. The distress is extreme if it is so severe that no reasonable person could be expected to endure it without undergoing unreasonable suffering.

*Id.* at 240. Similarly, the jury answered "yes" to special verdict number four:

### QUESTION NO. 4

Did James B. McNallen act with wanton disregard for Sallie Lou McNallen by invading her privacy or by intentionally causing her emotional distress?

*Id.* at 242. Likewise, in special verdict number five, the jury specifically determined that punitive damages of $100,000 were appropriate given McNallen's conduct. *Id.* The parties represented at oral argument that there was no appeal from the Texas proceeding.

■ On September 28, 1993, McNallen filed a Chapter 7 petition in the United States Bankruptcy Court for the Eastern District of Virginia, seeking to discharge the Texas judgment in his bankruptcy proceeding.[1] Subsequently, on December 22, 1993, Hagan filed an adversary complaint in the bankruptcy proceeding, petitioning the bankruptcy court to except from discharge the Texas judgment pursuant to 11 U.S.C.A. § 523(a)(6). Hagan contended that collateral estoppel precluded McNallen from attempting to litigate the issues of his willfulness and maliciousness in the bankruptcy proceeding because the Texas jury determined that McNallen's conduct was willful and malicious. The bankruptcy court granted summary judgment in favor of Hagan, *see* Fed. R.Bankr.P. 7056(c), applying collateral estoppel to hold that the Texas judgment was not dischargeable under § 523(a)(6), and the district court summarily affirmed.

McNallen appeals, raising two contentions. First, he contends that the issues of willfulness and maliciousness were never litigated against him in the Texas proceeding. McNallen maintains, therefore, that the Texas judgment has no preclusive effect in these proceedings, and thus the lower courts erred in applying collateral estoppel and concluding that the litigation of these two issues had been resolved against him. Second, he asserts that the punitive damages should be discharged regardless of whether collateral estoppel applies.

Conversely, Hagan asserts that the lower courts properly applied collateral estoppel in ruling the Texas judgment was not exempt from discharge. First, she maintains that the issues of McNallen's willfulness was conceded in the bankruptcy court and the issue of maliciousness was determined in the Texas proceeding, and hence the lower courts properly applied collateral estoppel to preclude litigation of maliciousness in the bankruptcy proceeding. Second, she posits that punitive damages are not dischargeable under § 523(a)(6).

### II.

### A.

■ Here, the bankruptcy court granted summary judgment in favor of Hagan. *See* Fed.R.Bankr.P. 7056(c). To prevail on a motion for summary judgment, Hagan must demonstrate that there is no genuine issue as to any material fact and that she is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In determining whether McNallen has created a genuine issue of material fact, we must construe all facts and reasonable inferences to be drawn from them in his favor. *See id.* at 257–58, 106 S.Ct. at 2514–15. McNallen may not rest on his pleadings, but rather must show that specific, material facts exist that give rise to a genuine triable

---

1. The filing of McNallen's petition triggered the stay of 11 U.S.C.A. § 362(d) (West Supp.1995). Subsequent to oral argument, Hagan filed a motion with this court demonstrating that final judgment eventually was entered by the Texas state court. The Texas judgment, therefore, is final. Even if final judgment had not been entered, we conclude that Texas courts would have found the Texas state court judgment sufficiently "final" for purposes of collateral estoppel. *See Van Dyke v. Boswell, O'Toole, Davis & Pickering,* 697 S.W.2d 381, 384 (Tex.1985); *Acker v. City of Huntsville,* 787 S.W.2d 79, 81–82 (Tex.Ct.App. 1990).

issue. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). McNallen may not, of course, "create a genuine issue of material fact through mere speculation or the building of one inference upon another," *Beale v. Hardy,* 769 F.2d 213, 214 (4th Cir.1985). The grant of summary judgment in bankruptcy proceedings entails the resolution of a legal conclusion, and hence our review is plenary. *See Hope v. Walker* (*In re Walker*), 48 F.3d 1161, 1163 (11th Cir.1995); *Century 21 Balfour Real Estate v. Menna* (*In re Menna*), 16 F.3d 7, 9 (1st Cir.1994).

### B.

■■■■ Collateral estoppel precludes relitigation of an issue decided previously in judicial or administrative proceedings provided the party against whom the prior decision was asserted enjoyed a full and fair opportunity to litigate that issue in an earlier proceeding. *See Allen v. McCurry,* 449 U.S. 90, 96, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980). In *Grogan v. Garner,* 498 U.S. 279, 284 & n. 11, 111 S.Ct. 654, 657 & n. 11, 112 L.Ed.2d 755 (1991), the Supreme Court concluded explicitly that principles of collateral estoppel apply in dischargeability proceedings in bankruptcy. In determining the preclusive effect of a state-court judgment, the federal courts must, as a matter of full faith and credit, apply the forum state's law of collateral estoppel. *See Kremer v. Chemical Constr. Corp.,* 456 U.S. 461, 481–82, 102 S.Ct. 1883, 1897–98, 72 L.Ed.2d 262 (1982); 28 U.S.C.A. § 1738 (West 1994). As the *Allen* Court explained, "Congress has specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so," *Allen,* 449 U.S. at 96, 101 S.Ct. at 415. It is well recognized, therefore, that the forum state's law of collateral estoppel applies in determining the dischargeability of debt. *See Bugna v. McArthur* (*In re Bugna*), 33 F.3d 1054, 1057 (9th Cir.1994) (applying California law of collateral estoppel to determine the dischargeability of debt under 11 U.S.C.A. § 523(a)(4)); *In re Bulic,* 997 F.2d 299, 304 n. 6 (7th Cir.1993) (applying Indiana law of collateral estoppel to conclude that the debtor was precluded from relitigating the issues of fraud, deceit, and perjury in discharge proceedings because these were determined in state court); *St. Laurent v. Ambrose* (*In re St. Laurent*), 991 F.2d 672, 675–76 (11th Cir.1993) (applying Florida law of collateral estoppel to deny discharge under 11 U.S.C.A. § 523(a)(2)(A)); *Lehman's Inc. of Anderson v. Hittle* (*In re Hittle*), 163 B.R. 814, 816–18 (S.D.Ind.1994) (applying Indiana law of collateral estoppel to deny discharge pursuant to § 523(a)(6)). Therefore, whether collateral estoppel applies must be determined according to Texas law, not federal law as the bankruptcy court and district court concluded. Under Texas law, the elements of collateral estoppel are: "(1) the facts sought to be litigated in the second action were fully and fairly litigated in the first action; (2) those facts were essential to the judgment in the prior action; and (3) the parties were cast as adversaries in the first action." *Bonniwell v. Beech Aircraft Corp.,* 663 S.W.2d 816, 818 (Tex.1984). While the lower courts improperly applied the federal law of collateral estoppel, that misapplication does not alter our disposition because there is no material difference between the elements of federal collateral estoppel and Texas collateral estoppel. *Compare Combs v. Richardson,* 838 F.2d 112, 115 (4th Cir. 1988), *with Bonniwell,* 663 S.W.2d at 818; *see also In re Bugna,* 33 F.3d at 1057 n. 1 (explaining that the bankruptcy court incorrectly applied federal law of collateral estoppel rather than the California law of collateral estoppel and while noting that the federal standard was more stringent, there was no material difference between the two standards).

■■■■ Having concluded that Texas law applies in determining the collateral estoppel issue, we must now determine whether collateral estoppel precludes the dischargeability of the Texas judgment pursuant to § 523(a)(6). The bankruptcy code provides in pertinent part:

A discharge [under the bankruptcy laws] does not discharge an individual debtor from any debt—

. . . .

for willful and malicious injury by the debtor to another entity or to the property of another entity;

11 U.S.C.A. § 523(a)(6) (West 1993). In order for collateral estoppel to apply, the issues of willfulness and maliciousness must have been determined by the Texas judgment. Hence, McNallen cannot discharge the Texas judgment rendered against him if his conduct giving rise to that judgment was determined to be "willful and malicious." We must determine, therefore, whether the Texas judgment did in fact adjudicate the issues of McNallen's wilfulness and maliciousness. Although collateral estoppel may well preclude a bankruptcy court from relitigating previously-decided issues, the ultimate issue of dischargeability is a legal issue, see *Stone v. Kirk*, 8 F.3d 1079, 1090 (6th Cir.1993), and exceptions to discharge are narrowly construed, see *In re Menna*, 16 F.3d at 9.

### 1.

 McNallen's first challenge is that the issue of his willfulness pursuant to § 523(a)(6) was not established by the Texas proceeding, and thus there can be no preclusive effect here. We conclude, however, that McNallen procedurally defaulted in raising the issue of willfulness because his trial counsel[2] conceded the issue of willfulness before the bankruptcy court: "I certainly don't dispute that [McNallen's] actions were willful." (J.A. at 89). As though this concession left any doubt that the issue of willfulness was conceded, trial counsel repeated: "I think the *only* issue before this Court is whether there really is malice underlying [McNallen's] actions." *Id.* at 92 (emphasis added). Given these concessions, we find that the question of willfulness is not an issue in this litigation. See *EF Operating Corp. v. American Bldgs.*, 993 F.2d 1046, 1050 (3d Cir.) (stating that representations made during the course of litigation, whether oral or written, are binding), *cert. denied,* —— U.S. ——, 114 S.Ct. 193, 126 L.Ed.2d 151 (1993); *United States v.*

*Bentson,* 947 F.2d 1353, 1356 (9th Cir.1991) (holding that statements made during closing argument constituted judicial admissions and were thus binding) (collecting authorities), *cert. denied,* 504 U.S. 958, 112·S.Ct. 2310, 119 L.Ed.2d 230 (1992); *American Title Ins. Co. v. Lacelaw Corp.,* 861 F.2d 224, 226 (9th Cir.1988) (stating that stipulations and judicial admissions are binding on the parties before the trial court and on appeal). McNallen, therefore, cannot be heard to complain with respect to the issue of willfulness.

### 2.

 In *St. Paul Fire & Marine Insurance Co. v. Vaughn,* 779 F.2d 1003, 1009 (4th Cir.1985), we concluded that the amendments to § 523(a)(6), which sprang from Congress' desire to overrule in part *Tinker v. Colwell,* 193 U.S. 473, 24 S.Ct. 505, 48 L.Ed. 754 (1904), which applied a lower standard of "willful and malicious" than Congress had envisioned, see H.R.Rep. No. 95th Cong., 1st. 365 *reprinted in* 1978 U.S.C.C.A.N. 5963, 6320–21, did not overrule the holding in *Tinker* with respect to the standard for determining malice. As noted in *St. Paul,* "because Congress only explicitly referred to the 'willful' prong of the *Tinker* holding, the malice prong is intact and no showing of specific malice is required" under § 523(a)(6). See *St. Paul,* 779 F.2d at 1009–10 (explaining legislative history and its impact on *Tinker* ). The malice standard under § 523(a)(6) eschews "specific malice or some other strict standard of malice," *id.,* and concludes that "[i]mplied malice, which may be shown by the acts and conduct of the debtor in the context of their surrounding circumstances, is sufficient under 11 U.S.C. § 523(a)(6)," *id.* at 1010. Our conclusion in *St. Paul* with respect to malice is consonant with that of several of our sister circuits. See, e.g., *In re Thirtyacre,* 36 F.3d 697, 700 (7th Cir.1994) (holding that "malice" means without just cause or excuse and requires no ill-will or specific intent to cause harm); *Conte v. Gau-*

---

**2.** Much of McNallen's counsel's complaint is that there were errors made in the Texas proceeding. While this may or may not be true, it is immaterial for purposes of this appeal. McNallen's remedy with respect to the Texas proceeding was an appeal to the Texas appellate courts. In any

event, the purpose of this appeal is not to seek a trial *de novo,* which is what McNallen is attempting to obtain. See *Jiminez v. Mary Washington College,* 57 F.3d 369, 378 (4th Cir. 1995) (explaining that the purpose of appeal is not to obtain a plenary trial).

*tam* (*In re Conte*), 33 F.3d 303, 308 (3d Cir.1994) (following *St. Paul*); *In re Walker*, 48 F.3d at 1164 (stating that malice refers to conduct that is " 'wrongful and without just cause' " and does not require " 'personal hatred, spite or ill-will' ") (quoting *Lee v. Ikner* (*In re Ikner*), 883 F.2d 986, 991 (11th Cir. 1989)); *Chrysler Credit Corp. v. Perry Chrysler Plymouth, Inc.*, 783 F.2d 480, 486 (5th Cir.1986) (stating that malice means "without just cause or excuse"); *Wheeler v. Laudani*, 783 F.2d 610, 615 (6th Cir.1986) (opining that malice means "without just cause or excuse; it does not require ill-will or specific intent to do harm"). According to *In re Lee*, 90 B.R. 202, 207 (Bankr.E.D.Va.1988), "[a]n act that is done deliberately and intentionally in knowing disregard of the rights of another would satisfy this implied malice standard."

■ Applying *St. Paul* and *Bonniwell*, we conclude that collateral estoppel precludes McNallen from litigating the issue of malice in this suit. First, the facts that McNallen attempts to litigate here were fully and fairly litigated in the Texas proceeding. Under *St. Paul*, actual malice is not required under § 523(a)(6)—implied malice suffices because "[s]omething implied is no less true than something expressed," *St. Paul*, 779 F.2d at 1010. The Texas jury found that McNallen's conduct was "outrageous," and this term was defined in special verdict number two as "beyond the bounds of decency, and a civilized community would find it to be atrocious and utterly intolerable...." (J.A. at 240). In special verdict number four, the jury found that "McNallen act[ed] with wanton disregard," *id.* at 242, and accordingly assessed punitive damages against him. The answers to the special verdict questions establish that the issue of McNallen's maliciousness was resolved in the Texas proceeding, and this conclusion is well supported by the record. For instance, in the Texas proceeding, Hagan testified that under the pretense of taking Sallie Lou to lunch, McNallen, without warning, explanation, or Sallie Lou's medication, took his mother from Austin to Baylor University Hospital for three days to undergo medical examinations. According to Sallie Lou's doctors, such examinations were unnecessary and further eroded Sallie Lou's frail condition. Additionally, rather than return his mother to the retirement home, McNallen left her with another man in a dark parking lot and requested that this man return Sallie Lou. While McNallen asserts that this man was his attorney, he cites no factual support for this assertion. Regardless, this fact would not vitiate the fact Sallie Lou was not cognizant of this man's identity. Sallie Lou was greatly distraught over this harrowing episode, and it proved debilitating to her mental and physical health. The first element of *Bonniwell* is thus satisfied.

Second, because the Texas jury determined that McNallen's conduct transgressed the bounds of decency and a civilized community would find it to be atrocious and utterly intolerable, it necessarily found McNallen deliberately disregarded the rights of another. Alternatively, if the jury found that McNallen engaged in conduct knowing that his mother was peculiarly susceptible to emotional distress, then it necessarily determined that he committed a wrongful act that would necessarily result in harm to his mother without just cause or excuse. Moreover, the determination of maliciousness is confirmed by the jury's independent finding in special verdict number four that McNallen acted with wanton disregard. Hence, the second element of *Bonniwell* is satisfied.

Third, the parties were adversaries in the first proceeding; indeed, the history of this litigation is marked by the acrimonious, contentious conduct the parties have demonstrated toward each other. The third element of *Bonniwell* accordingly is satisfied. All three elements of Texas law of collateral estoppel being satisfied, we are compelled to conclude that collateral estoppel applies with respect to the issue of malice.

### III.

■ McNallen contends that the punitive damages of $100,000 should be discharged, but recognizes that the case law is to the contrary. Indeed, the circuits hold that § 523(a)(6)'s exceptions from discharge apply to punitive damages. *See, e.g., Johnson v. Miera* (*In re Miera*), 926 F.2d 741, 745 (8th

Cir.1991) (explaining that punitive damages were not dischargeable if "both the punitive damage award and the compensatory damage award stemmed from the same willful and malicious injury"); *Combs,* 838 F.2d at 117 (holding that the punitive damages were not dischargeable, but stating that the court "d[id] not imply that every punitive award in a prior tort suit automatically renders the judgment debt nondischargeable in bankruptcy"); *Moraes v. Adams (In re Adams),* 761 F.2d 1422, 1427–28 (9th Cir.1985) (opining that "the exception to discharge turns upon the nature of the act which gave rise to the liability rather than upon the nature of the liability"); *see also In re St. Laurent,* 991 F.2d at 677–79 (holding that punitive damages are not dischargeable under § 523(a)(2)(A) if they "flow[ ] from the same course of fraudulent conduct necessitating an award of compensatory damages") (similar to *In re Miera*'s approach under § 523(a)(6)). Here, the conduct giving rise to the award of punitive damages sprang from the same conduct giving rise to compensatory damages and applying *In re Miera, Combs,* and *In re Adams,* we conclude that the award of punitive damages is not dischargeable.

### IV.

We are convinced that McNallen desperately is attempting to obtain a new trial in this appeal: he complains of numerous alleged errors in the Texas proceeding and that he is a loving son and the jury misconstrued his behavior. Even if these assertions are true, this appeal is not the vehicle for their correction. McNallen should have filed an appeal from the Texas trial court. The issue before us is whether applying the Texas law of collateral estoppel renders the Texas judgment nondischargeable under § 523(a)(6). Here, McNallen conceded that his conduct was willful. With respect to maliciousness, we conclude that this issue was conclusively determined by the jury in the Texas proceeding. As to punitive damages, we hold that they are not dischargeable here because the conduct underlying their award springs from the same conduct underlying the award of compensatory damages.

The judgment of the district court, therefore, is affirmed.

*AFFIRMED.*