In re Richard D. CHINNERY, Debtor.

Maria Alice BRANDENBERGER,
Plaintiff,

v.

Richard D. CHINNERY, Defendant.

Bankruptcy No. 94–42748–2.
Adv. No. 95–4018–2.

United States Bankruptcy Court,
W.D. Missouri.

June 10, 1996.

Howard Levitan, Boston, MA, for Debtor/Defendant.

C. Anderson Russell, Kansas City, MO, for Plaintiff.

## MEMORANDUM OPINION

FRANK W. KOGER, Chief Judge.

Richard D. Chinnery, hereinafter debtor, filed his petition for relief under Chapter 7 of the Bankruptcy Reform Act. Maria Alice Brandenberger, hereinafter creditor, timely filed her complaint to determine dischargeability of her claim. It is her contention that under the provisions of 11 U.S.C. § 523(a)(2)(A) misrepresentations were made to her by debtor that caused her to purchase stock for $50,000 that essentially was worthless. It was debtor's contention that he merely afforded creditor the opportunity to invest in the stock-as he himself had done-and that he lost his money along with everyone else.

■ The issue of nondischargeability under section 523(a)(2)(A) places the burden of proof as well as the burden of going forward on the party seeking the determination that any given debt is not dischargeable, and such a proponent must prove each element of his or her complaint by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). Of course any presumption or inference favors the debtor because of the strongly denominated policy of affording honest debtors a fresh start.

■ The Eighth Circuit has set out the elements the creditor must establish. As set out in *In re Ophaug*, 827 F.2d 340 (8th Cir.1987), they are:

1) that the debtor made the representation(s);

2) that at the time he knew they were false;

3) that he made them with the intention and purpose of deceiving the creditor;

4) that the creditor relied on such representation(s); and

5) that the creditor sustained the alleged loss and damage as the proximate result of the representation(s) having been made.

Alert readers will recall that the recent Supreme Court opinion in *Field v. Mans*, —— U.S. ——, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995), supplemented number 4 above by requiring the reliance to be justifiable.

■ With the above parameters established the Court now visits the evidence (often conflicting) as to who said what, who did what, and what results obtained. It is not disputed that debtor transferred to creditor some 100,000 shares of the capital stock of Trans Global Industries, Inc. and received from creditor the sum of $50,000 in two transactions. It is not disputed that said stock subsequently was proven to be worthless and that creditor suffered a total loss of all her money. What is disputed is how those events came to pass.

Creditor was (and is) a counselor and therapist (perhaps the equivalent of a minister) in the Unity School of Christianity. The headquarters of said institution are located in southeastern Jackson County, Missouri. As such, she came periodically to Kansas City and stayed with a longtime friend, one Jana Patricia Hawkins, sometimes referred to as Pat Hawkins. Ms. Hawkins had known debtor for some six years and had been intimate with him for some time, although debtor was married at that time to the then Mrs. Chinnery.

Debtor was an insurance broker with an office in Johnson County, Kansas. In May or June of 1990 he met creditor at Ms. Hawkins house. At that time debtor was "interested" in the stock of a corporation called Trans Global Industries, Inc. It is debtor's contention that he invested in said stock and allowed friends of his to invest in the company. From the schedules filed by the debtor, it appeared he had allowed the

following "friends" to invest the following amounts:

| | | |
|---|---|---:|
| David Alexander | | $25,000 |
| Carolyn Anderson | | 5,000 |
| Joel Beaver | | 35,000 |
| Ray Beaver | | 10,000 |
| Martha Bowle | | 10,000 |
| Creditor | | 50,000 |
| Martha Bray | | 25,000 |
| Amelia Campbell | | 25,000 |
| Doug Hunter | | 5,000 |
| John Constance | | 5,000 |
| Karen Constance | | 10,000 |
| Sharon Curtis | | 45,000 |
| Vincent Davis | | 12,500 |
| | Total | $262,500 |

Debtor's testimony was to the effect that every time one of his "friends" wanted to invest, he took the money and then passed it on to the seller of the stock so that the transfer was of no benefit to him. This testimony might have been more credible had the checks that were drawn on debtor's account come even close to what he deposited in the account from his "friends." However, there was some $100,000 difference between apparent intake and apparent disbursement. The Court can only assume this disparity enriched the debtor for peddling the worthless stock.

Debtor also testified that he never spoke directly to creditor and never made any representations to her concerning the stock in Trans Global. Creditor disputes this and the Court specifically finds that creditor's testimony is more credible than debtor's or Ms. Hawkins' testimony as to this point.

Creditor testified that debtor made direct representations to her that:

1) Prominent people were investing in the stock;

2) He would procure the stock for her only because he wanted to help her;

3) The Chamber of Commerce was promoting Trans Global;

4) That the corporation had several sources of ample funding to accomplish starting an airline with a hub at the old municipal airport;

5) That local companies were buying blocks of seats;

6) That the stock would go public shortly (perhaps in a week) and would be worth much more;

7) That the only reason he could get the stock for her was that one of the corporate officers owed him a favor;

and that these representations caused her to invest in the stock and give debtor the $50,000. Debtor did not tell her that the corporation was dormant; had no current activities; had never been in the airline business; had debt of over one million dollars; and was risky and speculative.

The Court after hearing from both creditor and debtor, and considering all the evidence presented, finds creditor's evidence more credible than debtor's evidence and finds that debtor did:

1) make the seven representations above;

2) knowing that said representations were false;

3) with the intent of deceiving plaintiff and getting her to invest her money;

4) that plaintiff relied upon debtor's representations concerning the stock and the investment;

5) that plaintiff's reliance was justifiable under all the circumstances in the case; and

6) that as a result of the foregoing plaintiff suffered the loss of $50,000 as a proximate result.

■ There is a second element to the case, concerning collateral estoppel. Creditor filed a complaint in the Federal District Court for the District of Kansas, same being case number 91–2447–C. Therein creditor asserted in Count I that debtor had violated section 10(b) and X–10b–5 of the rules of the Securities and Exchange Commission by issuing the identical misrepresentations. Creditor also alleged in Count II state security fraud under K.S.A. § 17–1768(a), again based upon debtor's representations as to the stock while knowing same to be untrue. Finally, in that action creditor alleged common law fraud which brought into play the same elements discussed in the initial portion of this opinion. Creditor prayed for $50,000 actual damages, attorney fees in the federal and state securities counts, 15% interest in the state securi-

ties count, and punitive damages of $500,000 in the state securities and common law fraud counts.

That complaint was filed in November of 1991 and served December 19, 1991. Debtor thereafter filed a denial. Thereafter, debtor agreed to a settlement of the entire case for $50,000 with a stay of 18 months for the payment of the $50,000. As a result, in October of 1991 a settlement agreement (in which debtor admitted his fraud as to plaintiff) was entered into and a confession of judgment entered into specifically stating that fraud was involved in the transactions between plaintiff and debtor and that said judgment was not dischargeable in bankruptcy.

When debtor did not pay the $50,000, an action was commenced to enforce the settlement. This was defended (sans counsel) by debtor and the Kansas District Court ruled against him. Creditor claims that this constituted collateral estoppel in this adversary action and this Court concurs. Although previously this Court denied the creditor's motion for summary judgment on the collateral estoppel issue, the Court determines that collateral estoppel is appropriately applied in this case because after that order was entered on May 17, 1995, several cases from various Courts of Appeal were filed in which the courts appear to have become more lenient in the circumstances under which collateral estoppel should be applied. *See, e.g., In re Nourbakhsh*, 67 F.3d 798 (9th Cir.1995); *In re Zelis*, 66 F.3d 205 (9th Cir. 1995); *In re Bursack*, 65 F.3d 51 (6th Cir. 1995); *In re McNallen*, 62 F.3d 619 (4th Cir.1995); *In re Bush*, 62 F.3d 1319 (11th Cir.1995); *In re Garner*, 56 F.3d 677 (5th Cir.1995).

Accordingly, both because the Court finds that creditor proved the 11 U.S.C. § 523(a)(2)(A) exception to discharge in this proceeding and because the Court finds that the prior proceedings in the Federal District Court in Kansas created collateral estoppel as to creditor's allegations in this proceeding, the Court concludes that the obligation of debtor to creditor is not dischargeable in bankruptcy.

*Conclusion*

Based on the above discussion, the complaint filed by Maria Alice Brandenberger is GRANTED.

The foregoing Memorandum Opinion constitutes Findings of Fact and Conclusions of Law as required by Fed.R.Bankr.P. 7052.

So ORDERED.