In re Joseph W. KAESTNER,
Chapter 7 Debtor.

CONSOLIDATED BANK & TRUST
COMPANY, Plaintiff,

v.

Joseph W. KAESTNER, Defendant.

Bankruptcy No. 94–34391–T.
Adv. Pro. No. 96–3048–T.

United States Bankruptcy Court,
E.D. Virginia,
Richmond Division.

Nov. 22, 1996.

Clarence N. Jenkins, Kimberly Friend Smith, Wilder & Gregory, Richmond, Virginia, for Plaintiff.

Joseph W. Kaestner, Kaestner & Pitney, P.C., Richmond, Virginia, Pro Se Defendant/Debtor.

## MEMORANDUM OPINION

DOUGLAS O. TICE, Jr., Bankruptcy Judge.

Trial was held November 4, 1996, on Consolidated Bank & Trust Company's complaint to except a debt from debtor's discharge in bankruptcy pursuant to 11 U.S.C. § 523(a)(6).

At the conclusion of trial the court announced findings of fact and conclusions of law from the bench and ruled that judgment would be entered for the debtor. This opinion supplements my bench ruling.

### Facts

Debtor, an attorney, was retained by Cleo and Barbara Thornhill in the Spring of 1991 to represent them in a criminal matter.

The Thornhills were principals in Eastern Mortgage Bankers, Inc., a Virginia corporation engaged in the business of making first mortgage loans. In January 1991 EMB had mortgage warehouse lines with the following banks: First Pennsylvania, Crestar, Signet Bank, and plaintiff Consolidated Bank & Trust Company. In March 1991 EMB was indebted to these institutions as follows (approximate):

| | |
|---|---|
| First Pennsylvania | $ 291,534.49 |
| Crestar | $2,724,411.97 |
| Signet | $ 184,556.00 |
| Consolidated | $ 697,461.96 |

Plaintiff Consolidated's warehouse line was secured by first deed of trust notes of EMB's borrowers and no other collateral. These notes were also guaranteed by Cleo and Barbara Thornhill.

In the course of the Thornhills' operation of EMB, they had violated Federal criminal banking laws, for which they employed debtor to represent them.

Anticipating that the Thornhills would be convicted for their crimes, debtor advised them to create and to transfer real and personal property to an irrevocable trust. The Thornhills agreed, and debtor prepared a trust agreement along with two deeds transferring real property to the trust.

The Thornhills' trust agreement, which was dated March 22, 1991, transferred to Richard Nossen, Trustee, "the real and personal property and receipts described in Schedule A" of the agreement. The agreement was recorded in the Circuit Courts of Henrico County, Chesterfield County, and Isle of Wight County, Virginia. However, no "Schedule A" was ever recorded with the trust agreement.

By its terms the trust agreement was irrevocable. Mr. and Mrs. Thornhill were named lifetime beneficiaries; upon their deaths the trust remainder was to go to the Thornhills' children.

Other than the preparation and recording of the trust and deed documents, debtor did not otherwise significantly participate in the Thornhills' property transfers or in their subsequent actions to keep property from the reach of creditors.

Plaintiff sued the Thornhills in the City of Richmond Circuit Court to set aside the transfers and for judgment on their guarantee of the EMB notes.

On December 21, 1994, Richmond Circuit Court entered an order in plaintiff's suit which set aside the Thornhills' transfers in trust under the trust agreement of March 22, 1991, pursuant to Va.Code § 55–80 (as fraudulent conveyances) and § 55–81 (as voluntary conveyances unsupported by consideration). Plaintiff also was awarded a judgment against the Thornhills in the approximate amount of $810,096.00.

Subsequent to the circuit court's setting aside of the Thornhill trust transfers, plaintiff liquidated some of the Thornhills' assets and applied proceeds towards their guaranty indebtedness. The total value of assets transferred by the Thornhills in trust and the

amount of plaintiff's recovery from these assets are not revealed in the trial record.

### Discussion And Conclusion

■ Section 523(a)(6) excepts from a debtor's discharge a debt

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

11 U.S.C. § 523(a)(6).

According to case authority the terms "willful and malicious" carry separate but quite similar definitions, and courts have usually made separate findings as to each.

■ Thus willful means "a deliberate or intentional act which necessarily leads to injury." *Rountrey v. Lee (In re Lee)*, 90 B.R. 202, 207 (Bankr.E.D.Va.1988).

The malicious element is usually more difficult to prove. Malice, according to *Black*, is:

The intentional doing of a wrongful act without just cause or excuse, with an intent to inflict an injury or under circumstances that the law will imply an evil intent. . . .

*Black's Law Dictionary* 862–63 (5th ed.1979); *see also Conte v. Gautam (In re Conte)*, 33 F.3d 303, 308 (3d Cir.1994) (defining willful and malicious actions under § 523(a)(6) as wrongful acts which "were substantially certain to result in injury or where the debtor desired to cause injury" and citing the Fourth Circuit opinion in *St. Paul Fire & Marine Ins. Co. v. Vaughn*, 779 F.2d 1003, 1009–10 (4th Cir.1985)); *Hagan v. McNallen (In re McNallen)*, 62 F.3d 619, 625 (4th Cir.1995).

■ However, there is no requirement that specific malice, ill will, or spite be proven. Implied malice, which may be shown by the acts and conduct of the debtor in the context of their surrounding circumstances, is sufficient under § 523(a)(6). *St. Paul Fire & Marine Ins. Co. v. Vaughn*, 779 F.2d at 1010; *see also In re McNallen*, 62 F.3d at 625; *Traditional Indus., Inc. v. Ketaner (In re Ketaner)*, 149 B.R. 395, 400 (Bankr.

E.D.Va.1992), *appeal dismissed*, 154 B.R. 467 (E.D.Va.1993).

While willful and malicious conduct may be subject to facile definition, the multitude of published § 523(a)(6) case opinions reveal an infinite variety of factual scenarios which illustrate man's capacity to inflict both physical and financial harm on his fellow man. There are some types of transactions which recur under § 523(a)(6), such as a debtor's conversion of a creditor's collateral security.[1] However, many of the cases are factually unique, and it is often difficult to measure in hindsight whether the harm resulted from willful and malicious conduct.

So is this case unique. Plaintiff has cited no similar case under § 523(a)(6) based upon an attorney's legal advice, and the court has found none.

To summarize, the debtor advised his clients, a married couple, to transfer assets in trust in anticipation of a criminal conviction and possible restitution order. According to the debtor, the clients' concern was to have assets available for the care of their children upon their anticipated incarceration. Other than debtor's initial preparation of a trust agreement and two real estate deeds, the evidence does not indicate that debtor participated in the clients' subsequent conduct. Nor does the record reveal any specific discussions between debtor and the clients.

At the time of the clients' transfers, they were indebted to several banks, including plaintiff, based upon loan guarantees. Plaintiff claims in its § 523(a)(6) complaint that the debtor acted willfully and maliciously as to plaintiff in advising his clients to make the transfers in trust and asserts that debtor owes it $810,096.00, the amount of the clients' bank debt.

■ Plaintiff's assertion that debtor is somehow liable for loan guarantees of debtor's clients' is misplaced and must be rejected. To be excepted from discharge, a debt must result from the debtor's willful and malicious action. The debt sought by plaintiff did not result from any conduct of debtor and cannot be asserted against debtor as a willful and malicious injury. *See Sacks v.*

---

**1.** *See 3 Collier On Bankruptcy* ¶ 523.16[3] (Lawrence P. King et al. eds., 15th ed.1996).

*Reader (In re Reader)*, 183 B.R. 630, 635 (Bankr.D.Kan.1995).

If plaintiff does have a monetary claim here it must derive from a willful and malicious tort against plaintiff committed by debtor. *See* 3 *Collier On Bankruptcy* ¶ 523.16 n. 4 (Lawrence P. King et al. eds., 15th ed.1996). As stated earlier, plaintiff has presented no case authority to support a tort claim against debtor on the facts of this case. Even so, I have no doubt that under sufficiently egregious circumstances, an attorney might be held liable for willful and malicious injury based upon legal advice.[2]

■ In the instant case, however, I am unwilling to extend debtor's conduct to the realm of either willfulness or malice as to plaintiff and find that plaintiff has failed in its burden of proof. Debtor's legal advice was not directed at plaintiff. Although the transfers of property recommended by debtor subjected his clients to civil law remedies, plaintiff has since recovered and liquidated the property. Debtor's conduct was simply not willful and malicious in the present context as I find it too far removed from plaintiff's injury in not recovering the debt owed by debtor's clients.[3]

■ Even assuming debtor's advice constituted willful and malicious injury, plaintiff has failed to present evidence of its damages or claim against debtor. Certainly, debtor did not damage plaintiff to the extent of the clients' debt. As a result of his advice, debtor's clients transferred assets of an unspecified value. The result of the transfers was that plaintiff found it necessary to sue the clients to recover and execute against ·the property, which it later did, again in an unspecified value. Thus it seems reasonable that plaintiff's damages from debtor's advice were its costs to recover the transferred assets. No evidence of these costs was presented at trial.[4]

A separate order will be entered granting judgment to the debtor.

### ORDER

For the reasons stated at the conclusion of trial and in the memorandum opinion entered simultaneously,

IT IS ORDERED that judgment is entered for the debtor defendant, and the complaint is dismissed.

---

2. There is case authority which supports the civil liability of an attorney, who, as a conspirator, participates with a client in defrauding creditors. *See Durant Software v. Herman*, 257 Cal.Rptr. 200 (Cal.Ct.App.1989), *appeal dismissed*, 272 Cal. Rptr. 612, 795 P.2d 782 (Cal.1990); *Chase Manhattan Bank, N.A. v. Perla*, 65 A.D.2d 207, 411 N.Y.S.2d 66 (N.Y.App.Div.1978); *McElhanon v. Hing*, 151 Ariz. 386, 728 P.2d 256 (App.1985), *aff'd in part and vacated in part on other grounds*, 151 Ariz. 403, 728 P.2d 273 (1986), *cert. denied*, 481 U.S. 1030, 107 S.Ct. 1956, 95 L.Ed.2d 529(1987); *Dalton v. Meister*, 71 Wis.2d 504, 239 N.W.2d 9 (1976); 16 Am.Jur.2d *Conspiracy* § 49 (1979 & Supp.1996).

3. "Exceptions to discharge are narrowly construed in furtherance of the Bankruptcy Code's 'fresh start' policy and the claimant must show that its claim comes squarely within an exception enumerated in Bankruptcy Code § 523(a)." *Century 21 Balfour Real Estate v. Menna (In re Menna)*, 16 F.3d 7, 9 (1st Cir.1994). This principle is often cited but usually has little import, given the specificity of § 523(a) exceptions to discharge. However, it can be influential on such a broad issue as willful and malicious injury.

4. The court denied plaintiff's request at the conclusion of trial to submit evidence of its attorney fees at a later date.