In re Adam L. FOWLER, Debtor.

Cheryl Fowler, by and through her Guardians, Shirley and Gary Rudisill, Plaintiff,

v.

Adam L. Fowler, Defendant.

Bankruptcy No. 03–02515–5–ATS. Adversary No. S–03–00177–5–AP.

United States Bankruptcy Court, E.D. North Carolina, Raleigh Division.

July 9, 2004.

Eileen Bornstein, Younce, Vtipil & Bradford, Raleigh, NC, for debtor.

David D. Lennon, Raleigh, NC, for plaintiff.

## MEMORANDUM OPINION AND ORDER ALLOWING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

A. THOMAS SMALL, Bankruptcy Judge.

A hearing to consider the cross-motions for summary judgment filed by plaintiff Cheryl Fowler, by and through her guardians, Shirley and Gary Rudisill, and the chapter 7 debtor and defendant Adam L. Fowler, was held in Raleigh, North Carolina on June 23, 2004. The plaintiff seeks summary judgment on the grounds that the defendant's debt to Mrs. Fowler is nondischargeable under 11 U.S.C. § 523(a)(6). The plaintiff also maintains that the debtor's discharge should be denied under 11 U.S.C. §§ 727(a)(4)(A) and (D) for knowingly and fraudulently making false statements under oath and for withholding information. The defendant seeks summary judgment on the grounds that the bases on which the plaintiff moves to have the debt declared nondischargeable are precluded by principles of res judicata and collateral estoppel. The debt is nondischargeable under § 523(a)(6), and the plaintiff's motion will be allowed. The defendant's motion will be denied.

## JURISDICTION

This court has jurisdiction over the parties and subject matter of this proceeding pursuant to 28 U.S.C. §§ 1334, 151, and 157, and the General Order of Reference entered by the United States District Court for the Eastern District of North Carolina on August 3, 1984. This is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(I) and (J) which this court may hear and determine.

## FACTS

The defendant filed his chapter 7 petition on July 11, 2003. The chapter 7 petition was preceded by this court's order of May 27, 2003, which directed the dismissal of the defendant's previously filed chapter 13 case. That chapter 13 petition was filed on August 31, 2001, on the eve of a state court trial of claims brought against the defendant by the plaintiff and the Rudisills. This court deferred decision on confirmation of the defendant's proposed chapter 13 plan pending determination of the state court lawsuit. The plaintiff prevailed in state court, and it is the dischargeability of the judgment she obtained against the defendant that is the primary issue in this adversary proceeding.

The state court matter arose from a criminal assault by the defendant against his former wife, plaintiff Cheryl Fowler, on October 28, 1994. On that day, the defendant assaulted Mrs. Fowler in their home and left her injured but unaided throughout the night while he slept. The testimo-

ny offered by the defendant during the state court action is chilling in its candor.

In sum, and according to his testimony, the defendant lost his temper with Mrs. Fowler because she followed him throughout their home arguing with him. The defendant battered Mrs. Fowler with repeated blows to her head and by throwing her to the floor until, eventually, she remained still. At that point, the defendant testified, he went to bed. He awoke at 4:00 a.m. and went to ask Mrs. Fowler if she was going to work. He testified that she "just laid there with an expression on her face." The defendant went back to bed. He noticed when he awoke again at 7:00 a.m. that Mrs. Fowler was still nonresponsive.

The defendant finally notified Mrs. Fowler's mother, Shirley Rudisill, that her daughter would not wake up. Mrs. Rudisill took Mrs. Fowler to the hospital where she received emergency surgery for a subdural hematoma. Mrs. Fowler suffered lasting injuries to her brain and now has permanent and serious disabilities which necessitated the appointment of her parents as her guardians. Mr. and Mrs. Rudisill also are raising Mrs. Fowler's two children, one of whom is the defendant's daughter. The defendant pled guilty to felony assault with a deadly weapon inflicting serious bodily injury, was sentenced in April 1996, and has completed his prison term.

Mrs. Fowler and the Rudisills, as Mrs. Fowler's parents and as her legal guardians, filed a civil action against the debtor in Wake County Superior Court in October 1997. The case ultimately was tried to a jury in June 2002. Mrs. Fowler obtained a judgment against the defendant for his negligence in failing to obtain medical attention for her, and the jury awarded Mrs. Fowler $997,760, plus interest, for personal injuries. The defendant also was ordered to pay Mrs. Fowler's costs of $11,295.99.

After entry of the state court judgment, the plaintiff objected to confirmation of the defendant's chapter 13 plan and requested dismissal of his case. In an order dated May 27, 2003, this court allowed the objection to confirmation and directed that the case be dismissed if the debtor did not convert the case to chapter 7. In that order, the court observed that Mrs. Fowler's claim arose from the defendant's criminal act and would almost certainly be nondischargeable under § 523(a)(6) in a chapter 7 case. That precise issue is now before the court. In response, the defendant claims that principles of res judicata or collateral estoppel preclude the plaintiff from re-litigating, or recharacterizing, a negligence-based state court judgment.

## DISCUSSION

A creditor bears the burden of proving, by a preponderance of the evidence, that a debt is nondischargeable. *Grogan v. Garner*, 498 U.S. 279, 287–88, 111 S.Ct. 654, 659–60, 112 L.Ed.2d 755 (1991). The plaintiff seeks to prove that the defendant's debt to her is nondischargeable under 11 U.S.C. § 523(a)(6), which excepts from discharge any debt for "willful and malicious injury by the debtor to another entity or to the property of another entity." A "willful" injury is one in which the injury itself is "deliberate or intentional," as opposed to intentional acts that resulted in the injury. *Kawaauhau v. Geiger*, 523 U.S. 57, 61, 118 S.Ct. 974, 977, 140 L.Ed.2d 90 (1998). "Malice" may be either specific or implied, and evidenced by the "acts and conduct of the debtor in the context of their surrounding circumstances." *St. Paul Fire & Marine Ins. Co. v. Vaughn*, 779 F.2d 1003, 1010 (4th Cir. 1985).

In *Geiger,* the Supreme Court considered the scope of the "willful and malicious injury" exception to § 523(a)(6), and framed the question as follows: "Does § 523(a)(6)'s compass cover acts, done intentionally, that cause injury . . ., or only acts done with the actual intent to cause injury . . .?" *Geiger,* 523 U.S. at 61, 118 S.Ct. at 977. The Court adopted the latter view and concluded that "nondischargeability takes a deliberate or intentional *injury,* not merely a deliberate or intentional *act* that leads to injury." 523 U.S. at 61, 118 S.Ct. at 977. This construction, the Court reasoned, avoids the potential consequences of the more open-ended analysis urged by the petitioners in *Geiger,* which could have included "situations in which an act is intentional, but injury is unintended, *i.e.,* neither desired nor in fact anticipated by the debtor." 523 U.S. at 62, 118 S.Ct. at 977. For that reason, the *Geiger* Court concluded that the respondent doctor's debt to the petitioners, which arose from a medical malpractice judgment they obtained against him, was not nondischargeable within the meaning of § 523(a)(6). The Court concluded that "debts arising from recklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6)." 523 U.S. at 64, 118 S.Ct. at 978. On the other hand, debts arising from intentionally inflicted injuries do, if the injury is inflicted willfully and with malice.

In accord with *Geiger,* this court is required to examine the nature of the defendant's acts. Unlike the negligent doctor in *Geiger,* the defendant in this case engaged in a brutal criminal assault. He intended to injure Mrs. Fowler, and he did so, to an extreme degree. His debt to her arises from that injury, which was inflicted willfully and maliciously. The defendant's sworn testimony in the state court action, offered without objection as support for the plaintiff's motion for summary judgment, provides ample grounds for such a finding. Moreover, the defendant pled guilty to the felony charge of assault with a deadly weapon inflicting serious injury. The defendant's own description of his assault upon Mrs. Fowler makes it absolutely clear that he intended to injure her, that he acted willfully, and that he acted with malice. The court is aware that malice need not be specific, and it may readily be implied from the circumstances of this case. But the court need not rely entirely on an implication, as the debtor's malice was actual, and specific. It would be difficult to find a case in which there was a more obvious correlation between the defendant's intent to inflict injury, the devastating consequences of the defendant's acts, and the resulting debt. This is the kind of act, and the kind of debt, that is most fully within § 523(a)(6)'s purview. To construe the statute any other way would render it essentially meaningless.

The defendant seeks to escape liability to Mrs. Fowler on grounds that the judgment debt itself is premised only on his negligence in leaving Mrs. Fowler without needed medical attention, not on his infliction of the injuries that necessitated it. The record indicates that the issue submitted to and decided by the jury was this: "Was the plaintiff, Cheryl Fowler, injured by the negligence of the defendant, Adam Fowler?" The jury answered "Yes," and awarded $997,760 for personal injuries. Pl.'s Ex. 1. The defendant's res judicata and collateral estoppel arguments are founded upon this fact. Because the jury's award was based on his negligence, the defendant argues, that same award cannot be excepted from discharge on grounds that it is a debt for an intentional, willful and malicious injury within the meaning of § 523(a)(6).

The court looks first to the defendant's argument that the question of whether the debt is for anything other than negligence cannot now be considered. The defendant points out that the plaintiff and Mr. and Mrs. Rudisill voluntarily dismissed with prejudice all of their state court claims against the defendant with the exception of the negligence claim[1] and the Rudisills' claim for negligent infliction of emotional distress, which was dismissed by directed verdict at the close of the plaintiffs' evidence. This posture, the defendant argues, supports application of either res judicata or collateral estoppel.

■ Federal courts apply the forum state's law of collateral estoppel. *In re McNallen,* 62 F.3d 619, 624 (4th Cir.1995). In North Carolina, courts distinguish between res judicata and collateral estoppel as follows:

> In order to successfully assert the doctrine of res judicata, a defendant must prove the following essential elements: (1) a final judgment on the merits in an earlier suit, (2) an identity of the causes of action in both the earlier and the later suit, and (3) an identity of the parties or their privies in the two suits. Collateral estoppel, on the other hand, applies where the second action between the same parties is upon a different claim or demand, and the judgment in the prior action operates as an estoppel only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered....

*Stafford v. Bladen County,* —— N.C.App. ——, 592 S.E.2d 711, 713 (2004) (quoting *Caswell Realty Assoc. v. Andrews Co.,* 128 N.C.App. 716, 720, 496 S.E.2d 607, 610 (1998)). Under North Carolina law, the defendant argues, a voluntary dismissal with prejudice constitutes a final judgment on the merits for purposes of collateral estoppel in a subsequent action. *Miller Bldg. Corp. v. NBBJ North Carolina, Inc.,* 129 N.C.App. 97, 101, 497 S.E.2d 433, 436 (1998).

■ Although collateral estoppel analyses are made with reference to the laws of the state where the underlying action originated, that analysis is tempered by longstanding precedent dictating that in bankruptcy, dischargeability issues that could have been but were not litigated in an earlier proceeding are not barred by principles of res judicata. *In re Raynor,* 922 F.2d 1146, 1148 (4th Cir.1991) (construing *Brown v. Felsen,* 442 U.S. 127, 138–39, 99 S.Ct. 2205, 2212–13, 60 L.Ed.2d 767 (1979)). An "indispensable requirement of res judicata (more precisely, issue preclusion or collateral estoppel) is actual litigation of the issue." *Raynor,* 922 F.2d at 1149. The court concludes that the required elements of res judicata and collateral estoppel are not satisfied in this case.

■ In *Raynor,* the United States Court of Appeals for the Fourth Circuit discussed application of res judicata, collateral estoppel, and issue preclusion collectively as they apply to analyses of debt dischargeability under § 523. The court reviewed what it described as longstanding and consistent precedent, articulated most fully in the leading case of *Combs v. Richardson,* 838 F.2d 112 (4th Cir.1988). The *Combs* decision, and the dischargeability cases that construe it, "illustrate the law of the circuit": For a party to be precluded from "litigating an issue dispositive of discharge, the record of the case giving rise to the judgment debt must show that the

---

1. The plaintiff's counsel explained in the hearing that Mrs. Fowler and the Rudisills chose to dismiss intentional tort claims because the insurance coverage available to them would not have covered intentional torts.

issue was actually litigated and determined by a final valid judgment in an earlier proceeding and that it was necessary to the decision." *Raynor*, 922 F.2d at 1149 (citing *Combs*, 838 F.2d at 113).

In assessing whether a prior verdict affected dischargeability of a debt, the *Combs* court found helpful the following analysis from the Sixth Circuit Court of Appeals:

> The determination whether or not a certain debt is dischargeable is a legal conclusion based upon the facts in the case. The bankruptcy court has the exclusive jurisdiction to make that legal conclusion. It must apply the statute to the facts and decide to discharge or not. Therefore, res judicata does not apply to prevent litigation of every issue which might have been covered in the . . . [earlier] proceeding on the debt. . . .

*Combs*, 838 F.2d at 115 (quoting *Spilman v. Harley*, 656 F.2d 224, 227 (6th Cir. 1981)). The *Combs* court affirmed the conclusions of both the bankruptcy and the district court that the plaintiff in *Combs*, who sought to recover a jury verdict against the defendant for the defendant's criminal assault upon him, was entitled to rely on the jury's finding that the defendant acted willfully and with malice.

■■■ In this case, the state court order provides only that "all claims alleged in the Complaint" other than Mrs. Fowler's claim for personal injuries resulting from the defendant's negligence and the Rudisills' negligent infliction of emotional distress claim were dismissed with prejudice. There is no reference to any particular claim or count. Def.'s Ex. 1. The 4–page complaint itself does not itemize specific claims or counts. Instead, it is a typical notice pleading in that it sets out the primary details of the assault and characterizes the defendant's actions as negligent, intentional, willful, wanton, recklessly neg-

ligent, and outrageous. Def.'s Ex. 6. The dismissal of unspecified claims, with prejudice, does not necessarily mean that an issue was "actually litigated," which is a separate question from whether there is a final judgment on the merits. *See Combs*, 838 F.2d at 114–15. In this case, the question of whether the defendant's actions were willful or malicious was not actually litigated. The state court judgment is based on the jury's finding that the defendant was negligent, which, aside from damages, was the only question put to it.

The *Combs* decision calls on bankruptcy courts to "make a careful and considered determination that the issue was actually litigated *and necessary* to the earlier decision" before applying any principles of preclusion. *Combs*, 838 F.2d at 116 (emphasis added). Even if questions of the defendant's intentional, willful, and malicious conduct could be considered "actually litigated and determined by a final judgment," those issues clearly were not "necessary to" the state court decision. Under a pure negligence analysis, the defendant's act must be "a" proximate cause, as opposed to "the" proximate cause, of the plaintiff's injury. So, as best the court can determine, the negligence verdict and resulting damages award encompass the defendant's actions in leaving the plaintiff and failing to call medical aid for her, which were a proximate cause of her injuries.

That conclusion does not preclude an additional finding by this court that the defendant's assault upon the plaintiff was an additional proximate cause of her injuries, and that the defendant inflicted those injuries willfully and maliciously. The defendant knew of the nature of Mrs. Fowler's injuries, having inflicted them himself, and his decision to leave her unaided throughout the night was more than negli-

gent. The defendant's inaction in response to his wife's obvious injuries furthered her suffering and exacerbated her injuries, and his failure to act also was willful and malicious. The transcript of the defendant's testimony during the civil trial leaves no doubt.

The court focuses its analysis, as it must, not on the nature of the liability—the negligence judgment—but rather on the basis for it. *In re McNallen,* 62 F.3d 619, 627 (4th Cir.1995). In *McNallen,* the court explained that punitive damages may be nondischargeable when the conduct giving rise to it is the same conduct that supports a compensatory damages award that is found to be nondischargeable. The court went on to cite *Moraes v. Adams (In re Adams),* 761 F.2d 1422, 1427–28 (9th Cir.1985), for the proposition that "the exception to discharge turns upon the nature of the act which gave rise to the liability rather than upon the nature of the liability." *McNallen,* 62 F.3d at 627. This observation predates but is wholly consistent with the *Geiger* Court's focus on the true nature of the factual circumstances giving rise to the injury in the first place.

In sum, the plaintiff's and Rudisills' abandonment of unspecified state court claims as possible separate and additional bases for recovery against the defendant by dismissing them with prejudice does not support application of collateral estoppel or res judicata in this proceeding. Neither collateral estoppel or res judicata nor the jury's negligence verdict preclude this court from reaching the legal conclusion that the defendant's debt to Mrs. Fowler is nondischargeable in bankruptcy under the language of § 523(a)(6). The defendant's acts in assaulting Mrs. Fowler, and separately in failing to obtain aid for her after doing so, were willful and malicious, and his debt to her arises from a "deliberate or intentional *injury,* not

merely a deliberate or intentional *act* that leads to injury." *Geiger,* 523 U.S. at 61, 118 S.Ct. at 977.

## CONCLUSION

The plaintiff's motion for summary judgment is **ALLOWED** on the grounds that the defendant's debt to Mrs. Fowler is nondischargeable under § 523(a)(6). Because the motion is decided on that ground, and in light of the plaintiff's indication that she does not wish to pursue the § 727 claim if she prevails on the § 523(a)(6) claim, that cause of action is dismissed. The defendant's motion for summary judgment is DENIED. An appropriate judgment shall be entered.

**SO ORDERED.**

## JUDGMENT

In a Memorandum Opinion and Order Allowing Plaintiff's Motion for Summary Judgment and Denying Defendant's Motion for Summary Judgment, the court granted summary judgment in favor of the plaintiff, Cheryl Fowler, and against the defendant, Adam L. Fowler. Accordingly,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the debts owed by the chapter 7 debtor, Adam L. Fowler, to the plaintiff, Cheryl Fowler, for personal injuries in the amount of $997,760, plus interest, and for costs in the amount of $11,295.99 are nondischargeable pursuant to 11 U.S.C. § 523(a)(6).